IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

In re:  RAKESH H. PATEL and                                              No. 5:11-bk-73416
       BAKULA R. PATEL, Debtors                                              Ch. 11

OPINION AND ORDER CONVERTING CASE TO CHAPTER 7

Before the Court is the *Motion to Convert Case to Chapter 7 or, Alternatively, to Dismiss Case* filed by creditor LNV Corporation [LNV] on June 15, 2012, and the response filed by the debtors on June 19, 2012.  The Court held a hearing on this matter on July 9, 2012.  At the conclusion of the hearing, the parties agreed to submit their closing arguments in the form of post-trials briefs and the Court took the matter under advisement.  For the reasons stated in this opinion, the Court finds that LNV established cause under § 1112(b)(4) and the debtors failed to establish unusual circumstances that show that conversion or dismissal is not in the best interest of creditors and the estate.  Accordingly, the Court grants LNV's motion and orders this case converted to a chapter 7 case as of the date of this order.

**BACKGROUND**

The debtors filed their individual voluntary chapter 11 petition on July 26, 2011.  At that time, the debtors operated (or had been previously operating) four convenience stores: the Super Stop and Conoco Express, both located in Bentonville, Arkansas; and the Quick Stop and AM PM Express, both located in Rogers, Arkansas.  The convenience stores are or were owned by corporations that are wholly owned by the debtors.[1]  According to the debtors' schedules and Rakesh Patel's testimony at the hearing, the debtors elected to surrender both the Quick Stop real

---

[1] Specifically, Super Stop is owned by Reetik, Inc.; Quick Stop is owned by Ashi, Inc.; and AM PM Express is owned by Bakula & Rakesh, Inc.  The debtors, however, are personal guarantors on loan documents for the acquisition of real property in these businesses.  The ownership of Conoco Express, or at least the business's real property, is currently questioned. The loan documents for the business property show that the debtors signed and acquired the debt in their personal capacity.  However, Rakesh Patel testified at the July 9 hearing that this was a mistake, and that it had been his and his wife's intention to execute the loan documents in the name of Swami of Springdale, Inc., one of their corporations.

property and the AM PM Express real property to secured creditor LNV. Of the remaining two convenience stores, Super Stop and Conoco Express, Super Stop is the debtors' current source of income.

Rakesh Patel testified at the hearing that revenue from the remaining two stores has dropped and is unreliable because of the stores' proximity to larger and newer businesses that also sell gasoline and other similar products. As a result, the debtors' monthly operating reports for August 2011 through May 2012 show that their income fluctuates significantly from month to month.[2]

Whether either convenience store has equity is questionable. In the debtors' initial Schedule B filed on July 26, 2011, they estimated that liabilities against Super Stop were approximately $850,000 and that the store could be sold for $1,000,000 to $1,200,000. For Conoco Express, the debtors estimated that liabilities were $450,000 and that its value was between $500,000 and $550,000. However, in their amended Schedule B filed nearly a year later, on June 26, 2012, the values and liabilities were significantly different: for Super Stop, the debtors believe the secured debt is between $453,000 and $476,000, and that it could be sold for $550,000. For Conoco Express, the debtors listed the secured debt as $425,000 and the value as approximately $500,000, and stated that if it were sold and expenses related to the sale tallied, no equity would exist. In addition, Rakesh Patel testified that real estate taxes are owed on Super Stop for 2009 and 2010, and possibly for 2008. He testified that real estate taxes for Conoco Express also were overdue, but that a recent loan modification concerning that property resolved the tax issues by an agreement that the lender will pay the taxes and add that amount to the principal due on the note.

---

[2] At the time of the hearing, the debtors had failed to file operating reports for the months of March and April 2012. Subsequently, the debtors filed their March 2012 operating report on July 10 and their April 2012 operating report on July 12. The Court takes judicial notice of both operating reports.

**LAW AND ANALYSIS**

Section 1112(b) states that the court shall convert a case to a chapter 7 case or dismiss the case-- "whichever is in the best interest of creditors and the estate"-- if the court finds that cause has been established. 11 U.S.C. § 1112(b)(1). Section § 1112(b)(4) provides a nonexclusive list of grounds that establish cause. However, upon a showing of a cause by the moving party, the court may not dismiss or convert if the court finds that there are "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" *and* the debtor shows that--

> (A) there is a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time . . . ; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>   (i) for which there exists a reasonable justification for the act or omission; and
>   (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). Accordingly, the burden is on the moving party to establish cause, at which time the burden shifts to the debtors to show that unusual circumstances exist that prevent mandatory dismissal or conversion. The requirement of unusual circumstances "contemplates conditions that are not common in Chapter 11 cases." *In re Keeley & Grabanski Land P'ship*, 460 B.R. 520, 537 (Bankr. D.N.D. 2011) (citing *Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008)); *see In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008) (finding that debtor's proposal to pay unsecured creditors in full on effective date of plan was "unusual circumstances" sufficient to show that conversion or dismissal was not in the best interests of creditors).

LNV argues that it has established cause for conversion or dismissal of the debtors' case on four separate grounds:

1. substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

2. gross mismanagement of the estate;

3

3. unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; and

4. failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief.

§ 1112(b)(4)(A)-(B), (F), (I). The Court will examine each of LNV's alleged grounds for cause below.

**1. Loss to or Diminution of the Estate / Absence of Likelihood of Rehabilitation**

A finding of cause under § 1112(b)(4)(A) requires a two-part inquiry. First, the Court must determine whether there is a "substantial or continuing loss to or diminution of the estate." Bankruptcy courts, including those in the Eighth Circuit, recognize negative cash flow and the corresponding inability to pay expenses as showing a continuous loss to or diminution of the estate. *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 515-16 (8th Cir. 2004); *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Penn. 2007). Second, the Court must determine whether there is the likelihood of rehabilitation. To succeed, the movant must establish that "the state of the [debtors'] financial affairs are such that [they are] unable to re-establish [themselves] on a firm or sound base." *In re Schriock Constr., Inc.*, 167 B.R. 569, 576 (Bankr. D.N.D. 1994).

LNV argues, and the Court agrees, that a continuing pattern of negative cash flow is apparent from an examination of the debtors' operating reports and schedules. The debtors' combined average monthly income listed in their Schedule I that was filed on July 26, 2011, is $4,500. The debtors' average monthly expenses according to their Schedule J total $4,219. A review of the debtors' filed monthly operating reports shows that out of the 10 months examined, their income has been near or above $4,500 in only 4 of the 10 months: September and October 2011, and January and March 2012. For the remainder of the months, the debtors' income has been significantly less and would not be sufficient to cover estimated expenses of $4,219 per month. Even if the debtors' expenses are regularly less than the estimated average included in their Schedule J--as the operating reports might suggest--their actual monthly income shown in the operating reports is still insufficient to pay necessary expenses, as illustrated below.

| Operating report month | Income | Distributions |
| --- | --- | --- |
| August 2011 | $1,175.00 | $881.36 (no mortgage paid) |
| September 2011 | $4,380.50 | $4,338.98 |
| October 2011 | $4,875.00 | $4,638.76 |
| November 2011 | $2,768.56 | $3,313.13 |
| December 2011 | $3,943.80 | $3,120.57 (no mortgage paid) |
| January 2012 | $7,650.00 | $8,502.56 |
| February 2012 | $2,250.00 | $2,032.51 (no mortgage paid) |
| March 2012 | $4,480.89 | $4,481.32 |
| April 2012 | $2,594.75 | $1,658.73 (no mortgage paid) |
| May 2012 | $1,575.29 | $2,313.54 (no mortgage paid) |

Distributions shown in the operating reports were greater than income for 4 out of 10 months: November 2011, January 2012, March 2012, and May 2012. Also problematic is the debtors' failure to make mortgage payments on their home in 5 of the 10 months: August 2011, December 2011, February 2012, April 2012, and May 2012.[3] In their Schedule J, the debtors listed an estimated monthly mortgage payment in the amount of $1,500; mortgage payments shown in the operating reports are listed as $1,533.81. Had the debtors made their mortgage payment every month, their distributions/expenses would have been greater than their income in every month but two (September and October 2011).

The debtors also listed estimated food costs of $500.00 per month in their Schedule J, but no food expenses are listed in the operating reports for the months of January, February, April, and May of 2012. Food expenses listed in three other months are exceedingly low for a family of four: $19.71 in August 2011, $44.73 in December 2011, and $87.75 in March 2012. Counsel for the debtors addressed this in his opening statement by explaining that the debtors and their two children eat many of their meals at their convenience store because the business requires around-

---

[3] The debtors' plan of reorganization filed June 28, 2012, states that they are current on their mortgage obligation. That is incorrect based on Rakesh Patel's testimony at the hearing and the monthly operating reports.

5

the-clock presence. When questioned, Rakesh Patel testified that he was not sure why food was not a listed expense on some of the operating reports and that this failure may have been a mistake. Based on this testimony, the Court cannot determine whether there is a reasonable explanation why insufficient or zero food expenses are listed in many of the operating reports. Because the operating reports show that distributions are greater than the income needed to pay necessary expenses such as the debtors' home mortgage and food, the Court finds that LNV has shown a continuing loss to or diminution of the estate. This finding is also supported by the sharp decline in the debtors' estimated value of Super Stop, their only source of income--from $1,000,000-$1,200,000 in July 2011 to $550,000 in June 2012.

For LNV to succeed in showing cause under § 1112(b)(4)(A), it must also establish that the debtors' financial affairs are such that they will not be able to recover from this continuing loss or diminution to the estate. At this time, the debtors' sole source of income is Super Stop. Rakesh Patel testified that business has dramatically decreased at Super Stop because of newer convenience stores in the same neighborhood. When asked if he anticipated this changing, he stated that business has gone "down and down." The debtors also own Conoco Express, from which they have never received income during the pendency of their bankruptcy. Like Super Stop, Conoco Express has experienced decreased revenues as a result of competition in the same area. The debtors previously leased Conoco Express to a relative for $4,600 per month and the lease payments received were used to pay the monthly mortgage payment of $4,500 on the property. When the mortgage holder later reduced monthly payments to $3,200 pursuant to the terms of a loan modification, the debtors reduced the monthly lease payments to $3,200. However, as of October 2011, the lessees returned possession of Conoco Express to the debtors because business was so poor. Based on Rakesh Patel's testimony at the hearing, the Court finds it unlikely that the debtors will derive additional income from Conoco Express in the future. In addition, mortgage payments are several months delinquent for the property and the debtors estimate that there is no equity, so sale of the real property would not place the estate on better footing financially.

Because LNV has shown continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, the Court finds that cause is established under § 1112(b)(4)(A). Accordingly, the burden shifts to the debtors to show that unusual circumstances exist to establish that creditors and the estate would be better served by the case remaining as a chapter 11 rather than being converted to a chapter 7 case or dismissed. The debtors' burden includes providing information sufficient to allow the Court to *specifically identify* those circumstances. § 1112(b)(2); *Nester v. Gateway Access Solutions, Inc.* (*In re Gateway Access Solutions, Inc.*), 374 B.R. 556, 566 (Bankr. M.D. Penn. 2007) (citing to the Congressional Record included within H.R.Rep. No. 109-31(1) at 94 (2005)). However, the debtors have not shown any unusual circumstances or conditions that are uncommon in chapter 11 cases. Accordingly, the Court is mandated to convert or dismiss the case, whichever is in the best interest of creditors and the estate. The Court need not proceed to § 1112(b)(2)(A) and speculate whether the debtors' plan can be confirmed within a reasonable period of time.

A finding that the movant has established a single ground for cause (and the debtors have failed to prove the unusual circumstances exception) is sufficient to warrant mandatory conversion or dismissal. *In re Reagan*, 403 B.R. 614, 621 (B.A.P. 8th Cir. 2009) (quoting *Loop Corp. v. U.S. Tr.*, 290 B.R. 108, 112 (Bankr. D. Minn. 2003)). However, the Court will examine LNV's other alleged grounds for cause below.

**2. Gross Mismanagement of the Estate**

Gross mismanagement of the estate, one of the enumerated grounds for cause under § 1112(b)(4)(B), applies only to actions that occur post-petition. *Keeley*, 460 B.R. at 540. LNV argues that the debtors demonstrated gross mismanagement of their estate primarily by their choice to make costly life insurance payments at the expense of their personal mortgage, taxes owed on their businesses, and other expenses. Again, the Court agrees. A summary of life insurance premiums paid by the debtors is shown below:

7

| Operating report month | Life insurance payments |
| --- | --- |
| August 2011 | $0 |
| September 2011 | $131.10 |
| October 2011 | $1,224.55 |
| November 2011 | $1,224.55 |
| December 2011 | $1,290.10 |
| January 2012 | $6,240.56 |
| February 2012 | $1,224.55 |
| March 2012 | $1,224.55 |
| April 2012 | $1,224.55 |
| May 2012 | $1,224.55 |

The debtors maintain life insurance policies on themselves, with their two children as beneficiaries. In addition, the debtors maintain life insurance policies on their children, with themselves as beneficiaries. The debtors' counsel elicited testimony from Rakesh Patel that these policies are investment and retirement vehicles. However, Rakesh Patel could provide no pertinent information about the nature of these policies--whether they are whole life or term policies or whether the policies are accruing cash value. In addition, as LNV argued in its post-trial brief, the total sum of life insurance premiums paid by the debtors during the nine months--$15,009.06--is nearly the total amount the debtors have proposed to pay to unsecured creditors over the life of their proposed plan.[4] Taking this into consideration, and also Rakesh Patel's seeming lack of knowledge regarding the policies, the Court finds that the debtors' decision that these premiums take precedence over something as basic as their personal mortgage payments is gross mismanagement of the estate.

Counsel for the debtors argues that to the extent the debtors were misguided in their decision to make these payments at the expense of others, cancellation of the policies would free up money

---

[4] The proposed plan, filed on June 28, 2012, states that the debtors' disposable income over the period of 5 years will result in "roughly" $16,860 paid to unsecured creditors. The debtors' unsecured debt listed in their Schedule F is $1,718,843.64.

in the future to meet their expenses, such as their mortgage payments. However, as it currently stands, the debtors continue to make their life insurance premium payments. In addition, even if the debtors stopped paying premiums, it is questionable whether their income would meet or exceed the amount needed each month for expenses.[5] The Court also notes that the debtors' failure to file timely their Form B26 is some evidence of mismanagement. The debtors are owners of multiple corporations, and it is important to provide timely, accurate, and complete information for their creditors' review. This delinquency is discussed further in the next section. For the foregoing reasons, the Court finds that LNV has established gross mismanagement of the estate as cause to convert or dismiss under § 1112(b)(4)(B)**.**

**3. Failure to Satisfy Filing or Reporting Requirement**

At the hearing, LNV questioned Rakesh Patel about his and his wife's failure to file the required operating reports for the months of March and April 2012. Rakesh Patel testified that he believed his wife had faxed the necessary information to their counsel's law office but speculated that the information had been lost in the transmission. Ultimately, he was unsure why the operating reports had not been filed. Counsel for the debtors later elicited testimony from Rakesh Patel that, in fact, the failure to file these reports was the fault of counsel's law firm rather than the fault of the debtors. In its closing arguments made in the form of a post-petition brief, LNV also cited to the debtors' failure to file their Form B26**,** which was due February 29, 2012, as sufficient cause under § 1112(b)(4)(F). Subsequent to the hearing, the debtors filed their March 2012 operating report on July 10, their April 2012 operating report on July 12, and their Form B26 on July 31.

The debtors' failure to timely file these required documents establishes cause under § 1112(b)(4)(F). However, § 1112(b)(2)(B) specifically contemplates situations where the

---

[5] The debtors' monthly mortgage payment, in the amount of $1,533.81, is greater than the amount the debtors have typically paid in insurance premiums per month ($1,224.55). In addition, the Court does not know what, if any, other expenses are not being paid each month. Finally, the debtors' monthly income is unpredictable according to the numbers shown in the operating reports.

movant has established cause by one of the enumerated examples other than § 1112(b)(2)(A), but the debtor can establish that "there exists a reasonable justification for the [debtors'] act or omission" *and* that the act or omission "will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2)(B)(i)-(ii). The Court is satisfied that Rakesh Patel met his burden of offering a reasonable justification for the omission to file the operating reports for March and April 2012 in a timely manner. In addition, the debtors filed both operating reports within three days of the trial. This is not to say that the failure to file timely operating reports is made acceptable by the debtors' immediate action to file them post-trial. However, the delinquent operating reports are not sufficient to warrant conversion or dismissal of the case in the light of the explanation (and prompt correction) provided by the debtors and the debtors' counsel.

Even so, the Court received no explanation at all why the debtors' Form B26 was filed four months late. Information that is required in a Form B26 is crucial to creditors because of the debtors' ownership of multiple corporations. Additionally, as stated earlier, the debtors have not shown "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate"  Accordingly, conversion or dismissal is proper.

**4. Failure to Pay Taxes**

Under § 1112(b)(4)(I), the failure to pay taxes due post-petition or the failure to file post-petition tax returns is cause for mandatory conversion or dismissal of a case. LNV cites to Reetik, Inc.'s partly or fully delinquent real estate taxes due on Super Stop for 2008 through 2010. LNV also argues that the debtors' failure to file 2011 tax returns for Swami of Springdale, Inc., one of the debtors' corporations, is sufficient to establish cause under § 1112(b)(4)(I).[6] The alleged delinquent taxes and tax returns are owed by Reetik, Inc. and Swami of Springdale, Inc. rather than the debtors personally. In addition, the taxes owed by Reetik, Inc. were due prior to the

---

[6] When asked if he or his wife had filed an extension of time for filing the 2011 tax returns for Swami of Springdale, Inc., Rakesh Patel answered that he did not know.

10

debtors' bankruptcy case filed on July 26, 2011, and are not within the scope of § 1112(b)(4)(I).[7] Finally, the Court has multiple questions about the alleged delinquent 2011 tax return of Swami of Springdale, Inc. for which it has no answers.[8] For these reasons, the Court finds that LNV did not establish cause under § 1112(b)(4)(I).

**Conclusion**

Because LNV has established three separate grounds for cause, and the debtors did not meet the requirements of the unusual circumstances exception, the Court must convert or dismiss the case. At this juncture, the parties disagree: LNV argues for conversion, and the debtors urge dismissal instead. In deciding whether to convert or dismiss, the Court has broad discretion. *Loop Corp.*, 379 F.3d at 515 (quoting *In re Lumber Exch. Bldg. Ltd. P'ship*, 968 F.2d 647, 648 (8th Cir. 1992)). After considering all facts before it, the Court finds that conversion is in the best interests of creditors and the estate. Once converted, a trustee can assist with the determination of the secured status and extent of liens held by the debtors' creditors[9]; determine whether the debtors' valuation of real property held by their corporations is correct; assist in the orderly liquidation of assets if equity exists; and oversee payment of debts without preference to particular creditors. Ownership issues regarding Conoco Express may also be addressed within a

---

[7] Rakesh Patel tesified that some of Reetik, Inc.'s taxes had been paid this year, but that the taxes are not current. The Court is unable to determine whether the delinquent taxes for Reetik, Inc. also include those owed for 2011 and post-petition.

[8] Until very recently, the debtors believed that Swami of Springdale, Inc. owned Conoco Express. It came to light during the current litigation that the debtors may instead own Conoco Express individually, as evidenced by the mortgage that the debtors executed on February 17, 2005, the mortgage modification that the debtors executed on February 8, 2010, and the property deed. Rakesh Patel testified that he and his wife had intended to execute the mortgage as officers of Swami of Springdale, Inc. but apparently, and unintentionally, signed the document in their personal capacity. Because this question of ownership has not been settled, the Court cannot say whether the debtors, rather than Swami of Springdale, Inc., are personally responsible for taxes owed on Conoco Express. Rakesh Patel testified that real estate taxes for Conoco Express have always accrued against Swami of Springdale, Inc.--and not the debtors personally--even if loan documents and the deed show different ownership.

[9] For instance, the amount and secured status of the debtors' debt owed to Petromark, Inc. is not clear to the parties, as was evident at the July 9 hearing.

chapter 7 case. In summary, conversion provides for a smoother and more equitable transition of the estate. For these reasons, the Court orders the debtors' case converted to a case under chapter 7 upon the entry of this order. The Court believes the debtors are well-intentioned and hard-working; however, such is not sufficient to overcome the multiple bases for cause established by the evidence.

IT IS SO ORDERED.

Ben Barry
United States Bankruptcy Judge
Dated: 08/22/2012

cc: Donald A. Brady, Jr.
Phyllis M. Jones
All parties in interest
U.S. Trustee